**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

**LINDSAY JENKINS,**

  Plaintiff,

 v.

**JOHN KERRY, *et al.*,**

  Defendants.

**Civil Action No.** 12-00896 **(CKK)**
**Misc. Action No.** 12-00665 **(CKK)**

**MEMORANDUM OPINION**
(March 7, 2013)

Plaintiff Lindsay Jenkins ("Plaintiff"), a citizen of the United Kingdom who is proceeding *pro se*, commenced the above-captioned civil action on June 1, 2012 against sixteen named defendants, asserting Racketeer Influenced and Corrupt Organizations Act ("RICO") and sexual discrimination and harassment claims in connection with mortgage foreclosure litigation in Florida state court.  On December 12, 2012, Plaintiff also filed a Notice of *Lis Pendens*, purporting to put all defendants named in her civil action, and any interested third parties, on notice of the existence of this civil litigation, which Plaintiff describes in the Notice as an action relating to her ownership interest in real property located in Palm Beach County, Florida.  *See* Misc. A. No. 12-00665, ECF No. [1].  The defendants in Plaintiff's civil action include:

- The "Florida Defendants" – specifically:

    – Twelve judges of the Fourth District Court of Appeals for the State of Florida[1] – Chief Judge Melanie May; Judge Martha Warner; Judge Mark Polen; Judge Matthew Stevenson; Judge Robert Gross; Judge Carole Taylor; Judge Hazouri; Judge Damoorgian; Judge Ciklin; Judge Gerber; Judge Levine; and Judge Connor

---

[1] As of the date of this Order, the public docket reflects that Plaintiff has yet to file proof of service with respect to nine of the twelve judges of the Fourth District Court of Appeals for the State of Florida.  Specifically, Plaintiff has not filed proof of service on Judge Warner; Judge Stevenson; Judge Gross; Judge Taylor; Judge Damoorgian; Judge Ciklin; Judge Gerber; Judge Levine; and Judge Connor.

- Two judges of the Fifteenth Judicial Circuit in West Palm Beach, Florida – Judge Lucy Chernow Brown and Judge Glenn Kelley

- The "Federal Defendants" – specifically John Kerry,[2] in his official capacity as Secretary of State, and Eric Holder, in his official capacity as United States Attorney General

In her Complaint, Plaintiff alleges that the Florida Defendants have aided and abetted Deutsche Bank, which sued her in 2007, in conducting "fraudulent and perjurious litigation" and in "acts of home invasion, burglary and theft." Compl. at 3-4. With respect to the Federal Defendants, Plaintiff alleges that the Federal Defendants have failed to fulfill their "common law duties" to ensure that non-U.S. citizens such as herself are "not victimized by local instrumentalities of the United States." *Id*. at 5. At bottom, Plaintiff appears to dispute the handling of litigation in Florida involving the foreclosure on her property in Palm Beach County Florida. By way of relief, Plaintiff seeks a declaration that the Florida Defendants "have been and are operating as a racketeering enterprise through a pattern of racketeering activity directed at plaintiff and tens of thousands of other innocent victims;" "injunctive relief" requiring the Federal Defendants to "take affirmative steps to protect Plaintiff's rights under international law to be free of criminal activity directed at her by local public officials in the United States;" and any other "additional relief as may be necessary and proper to do complete justice between the parties" and to "Plaintiff's common law and constitutional rights." Compl. at 15, 16.

Presently before the Court are the following dispositive motions: Defendant Chief Judge Melanie May's Motion to Dismiss Complaint with Prejudice, ECF No. [3]; Defendant Judge Lucy Chernow Brown's Motion to Dismiss Complaint with Prejudice, ECF No. [7]; Defendant Judge Mark Polen and Defendant Fred A. Hazouris' Motion to Dismiss Complaint with

---

[2] Plaintiff sued former Secretary of State, Hillary Rodham Clinton, in her official capacity. Upon his appointment to the position of Secretary of State, Mr. Kerry was automatically substituted as the defendant of record, in his official capacity, for any allegations against former Secretary of State Clinton in her official capacity. *See* FED. R. CIV. P. 25(d).

Prejudice, ECF No. [12]; Defendant Judge Glen Kelley's Motion to Dismiss Complaint with Prejudice, ECF No. [29]; and the Federal Defendants' Motion to Dismiss, ECF No. [32].  Also before the Court are the following motions by Plaintiff:  Motion for Entry of Default and Default Judgment against Defendant Lucy Chernow Brown, ECF No. [10]; Motion to Enter a Default as to All Defendants Who Have Appeared in this Action, ECF No. [18]; Motion for Leave to File Instanter and Leave to Serve Additional Defendants, ECF No. [46]; Motion to Vacate Order of December 12, 2012, ECF No. [47]; and Motion to Recuse the District Judge for Bias and Harassment, ECF No. [48].

Before all else, the Court must consider Plaintiff's motion to recuse, which, for reasons discussed below, the Court finds meritless.  Having made a determination that recusal is not warranted, the Court shall then turn to the remaining motions before the court.  In summary, and upon consideration of the parties' submissions, the relevant authorities, and the record as a whole, the Court shall dismiss, with prejudice, Plaintiff's claims against the Federal Defendants pursuant to Federal Rule of Civil Procedure 12(b)(6), because Plaintiff has failed to state a claim against the Federal Defendants.  With respect to the claims asserted against Defendants May, Brown, Polen, Hazouris, and Kelley, the Court shall dismiss Plaintiff's claims against these Florida Defendants under Federal Rule of Civil Procedure 12(b)(2) due to this Court's lack of personal jurisdiction.  Further, as explained more fully below, dismissal of Plaintiff's claims against Defendants May, Brown, Polen, Hazouris, and Kelley (all of whom are Florida state court judges) shall be with prejudice in view of the fact that Plaintiff's claims against them are necessarily barred by the doctrine of judicial immunity, as well as the fact that transfer to the proper court with personal jurisdiction – the United States District Court for the Southern District of Florida – would in any event be precluded by a recent pre-filing injunction order issued

against Plaintiff in that court.  Finally, for reasons explained below, the Court shall deny each of

Plaintiff's pending motions and discharge her *lis pendens* notice.[3]

### <u>Plaintiff's Motion to Recuse</u>

The Court shall first address Plaintiff's [48] Motion to Recuse the District Judge for Bias

and Harrassment, which Plaintiff filed on February 12, 2013, and which states only that

"Plaintiff has filed a Judicial Misconduct and Disability Complaint, which sets forth in detail the

grounds for this motion.  A copy is attached and incorporated by reference as though set forth

verbatim herein."  ECF No. [48], at 1.  On February 27, 2013, Chief Judge Merrick B. Garland

of the D.C. Circuit dismissed Plaintiff's Judicial Misconduct and Disability Complaint, finding

that "because complainant's allegations lack sufficient evidence to raise an inference that

misconduct has occurred and are directly related to the merits of the subject judges' decisions,

the complaint must be dismissed." Order on Judicial Council Complaint No. DC-13-90004 (Feb.

27, 2013), at 3.  This Court finds that Plaintiff's recusal motion requires dismissal for the same

reason.

The disqualification of a federal judicial officer is governed by 28 U.S.C. §455, which

provides, in pertinent part:

> (a) Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.

> (b) He shall also disqualify himself in the following circumstances:

>> (1) Where he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding.

28 U.S.C. § 455(a), (b)(1).

---

[3] Because the Court finds unequivocally that Plaintiff's claims against the Federal Defendants require dismissal under Rule 12(b)(6), and that Plaintiff's claims against the Florida Defendants require dismissal under Rule 12(b)(2) and the doctrine of judicial immunity, the Court need not, and in the interest of judicial economy, shall not address the alternative arguments asserted in the Defendants' respective motions to dismiss.

Because it is not clear from Plaintiff's motion whether she moves pursuant to Section 455(a) or 455(b), the Court shall set forth the standards applicable to both categories of motions. In assessing section 455(a) motions for recusal, the D.C. Circuit applies an "objective" standard: "Recusal is required when 'a reasonable and informed observer would question the judge's impartiality.'" *S.E.C. v. Loving Spirit Found., Inc.*, 392 F.3d 486, 493 (D.C. Cir. 2004) (quoting *United States v. Microsoft Corp.*, 253 F.3d 34, 114 (D.C. Cir. 2001), *cert. denied*, 534 U.S. 952, 122 S. Ct. 350, 151 L. Ed. 2d 264 (2001)). Further, a party moving for recusal pursuant to Section 455(a) "must demonstrate the court's reliance on an 'extrajudicial source' that creates an appearance of partiality or, in rare cases, where no extrajudicial source is involved, … a deep-seated favoritism or antagonism that would make fair judgment impossible." *Middlebrooks v. St. Coletta of Greater Washington, Inc.*, 710 F. Supp.2d 77, 78 (D.D.C. 2010), *aff'd*, 2011 WL 1770464 (D.C. Cir. Apr. 4, 2011), *cert. denied*, 132 S. Ct. 243, 181 L. Ed. 2d 139 (2011) (citations and internal quotation marks omitted). A party moving for recusal pursuant to Section 455(b) must likewise demonstrate "actual bias or prejudice based upon an extrajudicial source." *Id.* (citations omitted).

As the Supreme Court has observed, "judicial rulings alone almost never constitute a valid basis for a bias or partiality motion." *Liteky v. United States*, 510 U.S. 540, 554, 114 S. Ct. 1147, 127 L. Ed. 2d 474 (1994). This is because judicial rulings by themselves "cannot possibly show reliance upon an extrajudicial source; and can only in the rarest circumstances evidence the degree of favoritism or antagonism required … when no extrajudicial source is involved." *Id.* Therefore, dissatisfaction with a court's rulings "almost invariably" provides a proper ground for appeal – *not* for recusal. *Id.* In a like manner, "opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings … do not constitute

a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible." *Id.*

Upon careful review of Plaintiff's motion to recuse, and Plaintiff's Complaint of Judicial Misconduct attached as an exhibit and incorporated therein, it is readily apparent that all of Plaintiff's grievances relate to the substance of various rulings issued by the Court in this case. Specifically, Plaintiff complains about the Court's December 12, 2012 Order denying Plaintiff leave to file the amended complaint due to the fact that Plaintiff had not filed any motion to amend therewith, *see* ECF No. [39], and the Court's December 12, 2012 Order denying Plaintiff's motion to impose the cost of service upon the yet unserved defendants in this action, *see* ECF No. [38]. Plaintiff also complains, albeit without citing to any specific examples, of the Court's "routinely ruling" on motions without having received a response by Defendants; the Judge's "rigid" and unequal application of Local Rule 7(m), which requires the parties to confer before the filing of a nondispositive motion; and the fact that several of the Court's orders have "advised [her] that if she does not respond by a date certain, the judge will impose sanctions (dismissal)" or take some other "hostile action" not specified by Plaintiff.

Plaintiff has failed to offer, in accordance with the objective standard of Section 455(a), any ground upon which the above described rulings should be regarded as an exception to the general principle articulated by the Supreme Court that "judicial rulings alone almost never constitute a valid basis for a bias or partiality motion." *Likey*, 510 U.S. at 554. Nor has Plaintiff demonstrated "actual bias or prejudice based upon an extrajudicial source," in accordance with Section 455(b)(1). *See Middlebrooks v. St. Coletta of Greater Washington, Inc.*, 710 F. Supp.2d at 78. Put differently, Plaintiff does not allege that the Court has based its rulings on any extrajudicial facts or events, or that the undersigned has "personal knowledge of disputed

evidentiary facts concerning the proceeding[.]" *See* 28 U.S.C. § 455(b)(1).  To the contrary, the record of this case demonstrates that each ruling was based solely on the record developed before this Court.  While Plaintiff conclusorily attributes the Court's rulings to a generalized "bias" against her, it is well established that "a judge should not recuse [herself] based upon conclusory, unsupported or tenuous allegations." *In re Kaminski*, 960 F.2d 1062, 1065 n. 3 (D.C. Cir. 1992) (per curiam).  *See also Karim-Panahi v. U.S. Congress*, 105 Fed. Appx. 270, 274-75 (D.C. Cir. 2004) (where plaintiff has failed to point "to anything that would suggest that [the Court] has formed an opinion on some basis other than her participation in this case," recusal is inappropriate).

At bottom, it is clear that Plaintiff is simply displeased with certain of the Court's rulings in this action, but that alone does not provide a proper ground for recusal.  *Liteky*, 510 U.S. at 555.  *Accord*, *Loving Spirit Found.*, 392 F.3d at 494 ("[I]f disqualification were required merely as a result of counsel's disagreement with judicial conclusions reached in the course of litigation, the judicial system would grind to a halt.") (citation and internal quotation marks omitted). Accordingly, the Court finds that Plaintiff's [48] Motion to Recuse the District Judge for Bias and Harrassment is without merit and must be denied.

### Federal Defendants' Motion to Dismiss

The Federal Defendants have moved pursuant to Federal Rule of Civil Procedure 12(b)(6), which provides that a party may challenge the sufficiency of a complaint on the grounds that the complaint "fail[s] to state a claim upon which relief can be granted."  A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," FED .R. CIV. P. (8)(a), "in order to give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555,

127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) (citation omitted).   Although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion to dismiss for failure to state a claim, a plaintiff must furnish "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Id.* "Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (citation omitted).   Rather, a complaint must contain sufficient factual allegations that, if accepted as true, "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663.

When evaluating a motion to dismiss for failure to state a claim, the district court must accept as true the well-pleaded factual allegations contained in the complaint. *Atherton v. D.C. Office of Mayor*, 567 F.3d 672, 681 (D.C. Cir. 2009).   In deciding a Rule 12(b)(6) motion, a court may consider "the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint," or "documents upon which the plaintiff's complaint necessarily relies even if the document is produced not by [the parties]." *Ward v. D.C. Dep't of Youth Rehab. Servs.*, 768 F. Supp. 2d 117, 119 (D.D.C. 2011) (citations omitted).   *Pro se* complaints are held to a less stringent standard than complaints drafted by counsel. *Moore v. Motz*, 437 F. Supp. 2d 88, 90 (D.D.C. 2006) (citations omitted).   "Even a *pro se* plaintiff's inferences, however, need not be accepted if such inferences are unsupported by the facts set out in the complaint." *Id.* (citations and internal quotation marks omitted).   "A *pro se* complaint, like any other, must state a claim upon which relief can be granted by the court." *Id.* (citing *Crisafi v. Holland*, 655 F.2d 1305, 1308 (D.C. Cir. 1981)).

Here, Plaintiff asserts two claims in her Complaint – a civil RICO claim under 28 U.S.C. § 1964 and a "common law sexual discrimination and harassment" claim.  With regard to Plaintiff's common law sexual discrimination and harassment claim, Plaintiff does not present a single factual allegation to support a claim against the Federal Defendants for discrimination or harassment on the basis of sex.  Rather, all of Plaintiff's factual allegations regarding the alleged sexual discrimination are limited to the Florida Defendants' purported failure to provide Plaintiff with "fair and impartial justice" in connection with her foreclosure litigation.  *See* Compl. at 15-16.  This given, Plaintiff's sexual discrimination and harassment claim, to the extent it is even asserted as to the Federal Defendants, must be dismissed because Plaintiff has pled no factual content whatsoever which would allow the Court to infer that the Federal Defendants are liable for sexual discrimination and harassment.

Regarding Plaintiff's Civil RICO claim, Plaintiff likewise fails to assert a single factual allegation that the Federal Defendants have in any way been involved in the racketeering activity alleged in the Complaint.  Indeed, Plaintiff does not allege that the Federal Defendants played any direct role in the state court litigation concerning the foreclosure of her Florida property.  Rather, Plaintiff alleges only that they failed to ensure that she was "not victimized."  Compl. at 5.  Specifically, Plaintiff alleges that Defendant Kerry, as the Secretary of State, "has common law duties to ensure that UK citizens are not victimized by local instrumentalities of the United States."  *Id*.  With respect to Defendant Holder, Plaintiff asserts that "[w]hile Holder's common law interest in protecting foreign citizens within United States [*sic*] is not as clearly defined as [Kerry's], Holder has a responsibility for the overall safety of all non-US citizens present in the United States."  *Id*.  As aforementioned, Plaintiff seeks injunctive relief requiring the Federal

Defendants to "take affirmative steps to protect Plaintiff's rights under international law to be free of criminal activity directed at her by local public officials in the United States." *Id*. at 15.

Plaintiff has failed to articulate the nature of these broadly alleged "duties" to guard non-citizens against "victimization" and ensure their "overall safety," let alone provide a substantive source of law establishing those duties beyond a nebulous invocation of "common law" and/or "international law." And Plaintiff has certainly not pled – not even summarily – the elements of a cause of action in the case of breach of such supposed common law duties, or any specific action or inaction on behalf of the Federal Defendants which led to a failure to perform these alleged duties or which harmed Plaintiff in any way. Nor does Plaintiff's opposition to the Federal Defendants' motion to dismiss provide any further support for her claims. Rather, in responding to the Federal Defendants' arguments pursuant to Rule 12(b)(6), Plaintiff simply states conclusorily that she "has stated a *prima facie* basis for relief" under "federal common law and international law, as well as specific federal statutes." *See* ECF No. [50], at 3. It is well-established, however, that although detailed factual allegations are not necessary, a complaint must contain "more than an unadorned, the-defendant-unlawfully-harmed-me accusation" and that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S at 678. Here, the Court agrees with the Federal Defendants that Plaintiff's Complaint does not even provide the "threadbare recitals of the elements" of her claims against the Federal Defendants and therefore falls woefully short of the standard required to survive a Rule 12(b)(6) motion. Accordingly, Plaintiff's Civil RICO and/or "common law" duty claims against the Federal Defendants require dismissal.

**Defendants May, Brown, Polen, Hazouris, and Kelley's Motions to Dismiss**

Also before the Court are Defendant Chief Judge Melanie May's Motion to Dismiss Complaint with Prejudice, ECF No. [3]; Defendant Judge Lucy Chernow Brown's Motion to Dismiss Complaint with Prejudice, ECF No. [7]; Defendant Judge Mark Polen and Defendant Fred A. Hazouris' Motion to Dismiss Complaint with Prejudice, ECF No. [12]; and Defendant Glen Kelley's Motion to Dismiss Complaint with Prejudice, ECF No. [29].

On August 29, 2012, Plaintiff filed a single [16] Opposition to Defendants' Motion to Dismiss, purporting to respond to May, Brown, Polen, and Hazouris' dispositive motions. Plaintiff filed her [46-2] Opposition to Motion to Dismiss of Defendant Kelley on February 4, 2013.  Previously, in an [42] Order dated December 28, 2012, the Court gave Plaintiff until January 25, 2013 to file an opposition to Defendant Kelley's Motion to Dismiss.  On February 4, 2013, Plaintiff filed a [46] "Motion for Leave to File Instanter" which, *inter alia*, sought leave to late-file the attached opposition to Defendant Kelley's motion to dismiss, which Defendant Kelley did not oppose.  The Court hereby grants *nunc pro tunc* Plaintiff's request to late-file her opposition.  Accordingly, Plaintiff's [46-2] opposition to Defendant Kelley's motion to dismiss shall be considered timely filed and has been considered by the Court in issuing today's rulings. Neither Defendant May, Brown, Polen, Hazouris, or Kelley elected to file a reply in further support of their motions to dismiss by the required deadlines.  Therefore, Defendants May, Brown, Polen, Hazouris, and Kelley's motions to dismiss are all presently ripe for the Court's adjudication.

Defendants May, Brown, Polen, Hazouris, and Kelley have moved to dismiss Plaintiff's Complaint because, *inter alia*, Plaintiff has failed to demonstrate that this Court has personal jurisdiction over them.  When personal jurisdiction is challenged under Rule 12(b)(2), the

plaintiff bears the burden of establishing a factual basis for asserting personal jurisdiction over a defendant.   *See Crane v. N.Y. Zoological Soc'y*, 894 F.2d 454, 456 (D.C. Cir. 1990).   To establish that personal jurisdiction exists, the plaintiff cannot rest on bare allegations or conclusory statements but "must allege specific facts connecting [each] defendant with the forum."  *Second Amendment Found. v. U.S. Conference of Mayors*, 274 F.3d 521, 524 (D.C. Cir. 2001) (internal quotation omitted).  "To make such a showing, the plaintiff is not required to adduce evidence that meets the standards of admissibility reserved for summary judgment and trial[;]" but rather, the plaintiff may "rest her arguments on the pleadings, 'bolstered by such affidavits and other written materials as [she] can otherwise obtain.'" *Urban Inst. v. FINCON Servs.*, 681 F. Supp. 2d 41, 44 (D.D.C. 2010) (quoting *Mwani v. bin Ladin*, 417 F.3d 1, 7 (D.C. Cir. 2005)).   In the case of a *pro se* plaintiff, although the Court is required to construe the *pro se* complaint liberally, *see Howerton v. Ogletree*, 466 F. Supp. 2d 182, 183 (D.D.C. 2006), "*[p]ro se* plaintiffs are not freed from the requirement to plead an adequate jurisdictional basis for their claims." *Gomez v. Aragon*, 705 F. Supp. 2d 21, 23 (D.D.C. 2010) (citation omitted).

        In this Circuit, courts determine whether personal jurisdiction may be exercised "by reference to District of Columbia law."  *United States v. Ferrara*, 54 F.3d 825, 828 (D.C. Cir. 1995).  "A District of Columbia court may exercise personal jurisdiction over a person domiciled in, organized under the laws of, or maintaining his or its principal place of business in, the District of Columbia as to any claim for relief."  D.C. Code § 13-422.  Exercise of this so-called "general jurisdiction" requires that the defendant's contacts within the forum be "continuous and systematic" in order for the defendant to be forced to defend a suit arising out of any subject matter unrelated to the defendant's activities within the forum.  *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415-16, 104 S. Ct. 1868, 80 L. Ed. 2d 404 (1984).

Alternatively, the District Court for the District of Columbia may exercise "specific jurisdiction" to entertain controversies based on acts of a defendant that "touch and concern the forum." *Kopff v. Battaglia*, 425 F. Supp. 2d 76, 81 (D.D.C. 2006) (citing *Steinberg v. Int'l Criminal Police Org.*, 672 F.2d 927, 928 (D.C. Cir. 1981)).   To determine whether it may exercise specific jurisdiction over a particular defendant, a court must engage in a two-part inquiry.   First, the Court must determine that the District of Columbia's long arm statute, D.C. Code § 13-423, authorizes jurisdiction. [4]  *See GTE New Media Servs., Inc. v. Bell-South Corp.*, 199 F.3d 1343, 1347 (D.C. Cir. 2000).   *See also Edmond v. United States Postal Serv. Gen. Counsel*, 949 F.2d 415, 424 (D.C. Cir. 1991) (even when subject matter jurisdiction is predicated on federal question, plaintiffs must rely on the D.C. long-arm statute to assert personal jurisdiction over out-of-district defendants).   Second, the court must find that exercise of jurisdiction comports with the requirements of constitutional due process.   *See GTE New Media Servs.*, 199 F.3d at 1347.   This determination turns on whether a defendant's "minimum contacts" with the District of Columbia establish that "the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S. Ct. 154, 90 L. Ed. 95 (1945) (internal citation and quotation marks omitted). Such minimum contacts must arise from some act by which the defendant "purposefully avails" himself of the privilege of conducting activities within the District of Columbia, thus invoking

---

[4] The D.C. long-arm statute provides that a District of Columbia court may exercise personal jurisdiction over a person as to a claim for relief arising from the person's: (1) transacting any business in the District of Columbia; (2) contracting to supply services in the District of Columbia; (3) causing tortious injury in the District of Columbia by an act or omission in the District of Columbia; (4) causing tortious injury in the District of Columbia by an act or omission outside the District of Columbia if he regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed, or services rendered, in the District of Columbia; (5) having an interest in, using, or possessing real property in the District of Columbia; contracting to insure or act as surety for or on any person, property, or risk, contract, obligation, or agreement located, executed, or to be performed within the District of Columbia at the time of the contracting, unless the parties otherwise provide in writing; or (7) marital or parent and child relationship in the District of Columbia (subject to certain enumerated conditions).  D.C. Code § 13-423.

the "benefits and protections of its laws." *Asahi Metal Indus. Co. v. Super. Ct. of Cal., Solano Cty.*, 480 U.S. 102, 109, 107 S. Ct. 1026, 94 L. Ed. 2d 92 (1987).  Put differently, the court "must ensure that the defendant's conduct and connection with the forum 'are such that he should reasonably anticipate being hauled into court there.'" *Marshall v. Labor & Indus., State of Washington*, 89 F. Supp. 2d 4, 9-10 (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S. Ct. 559, 62 L. Ed. 2d 490 (1980)).

Here, Plaintiff's Complaint fails entirely to demonstrate that this Court has personal jurisdiction over any of the Florida Defendants.  These Defendants do not reside within the District of Columbia, and their principal places of business (the Fourth District Court of Appeals for the State of Florida and the Fifteenth Judicial Circuit in West Palm Beach, Florida) are outside of the District, as well.  Further, the Complaint alleges no facts suggesting that the Florida Defendants, acting in their official capacity, transacted business, contracted to supply services, or caused tortious injury in the District of Columbia.  To the contrary, as the Complaint makes clear, the purported wrongdoing – *i.e.*, the alleged participation in a "racketeering enterprise to permit Deutsche Bank and its agents and employees to maintain a continuing pattern of criminal activity and fraudulent litigation against Plaintiff and her home," *see* Compl. at 5 – is alleged to have taken place in Florida courts, in connection with property also located in Florida.

Nor has Plaintiff made any arguments in her opposition briefs to support a *prima facie* showing of personal jurisdiction over any of the Florida Defendants.  To the contrary, Plaintiff's oppositions do no more than rehash the vague allegations of the corruption of Florida's public officials asserted in her Complaint and conclusorily assert, with no meaningful legal or factual support, that "the arguments advanced by the Defendants to support dismissal range from the

ludicrous to the absurd." *See generally* ECF Nos. [16], [46-2] .  Regarding Defendants May,

Brown, Polen, Hazouris, and Kelley's specific challenge to personal jurisdiction, Plaintiff states

only that "The defendants are sued in their official capacity as state employees/officials.  Florida

maintains an office in the District of Columbia and is amenable to service of process in

Washington for matters involving official misconduct and federal claims related thereto." *Id.* at

5 (citing and attaching as Exhibit C a "Washington Representatives/State-Federal Contacts"

sheet published by the National Governors Association).  Plaintiff provides no further

explanation as to how this would support a finding of personal jurisdiction.  To the extent

Plaintiff's Complaint could be generously construed as somehow relying on the State of

Florida's alleged government relations connections to the District of Columbia as a basis for

personal jurisdiction, such argument is a nonstarter, as the courts have long recognized a

"government contacts" exception to the "transacting business" provision of the D.C. long-arm

statute.  The government contacts exception provides that "a defendant's relationships with

federal agencies do not enter the calculus of minimum contacts with the District of Columbia for

jurisdictional purposes." *Chrysler Corp. v. General Motors Corp.*, 589 F. Supp. 1182, 1196

(D.C. Cir. 1984).  *See also Envtl. Research Int'l, Inc. v. Lockwood Greene Engineers, Inc.*, 355

A.2d 808, 813 (D.C. 1976) ("To permit our local courts to assert personal jurisdiction over

nonresidents whose sole contact with the District consists of dealing with a federal

instrumentality not only would pose a threat to free public participation in government, but also

would threaten to convert the District of Columbia into a national judicial forum.").

Simply put, Plaintiff's allegations are asserted against Florida state court judges and stem

from Florida state court proceedings pertaining to real property located in Florida.  Because

Plaintiff has failed entirely to demonstrate that the Defendants May, Brown, Polen, Hazouris,

and Kelley possess any "contacts" whatsoever with the District of Columbia – and certainly no contacts sufficient to satisfy the requirements of either general or specific jurisdiction set forth above, this Court finds itself without personal jurisdiction over Plaintiff's claims against them. Ordinarily, a finding that a district court lacks personal jurisdiction over a defendant would result in either dismissal without prejudice or, should the parties so request and the Court find it in the interests of justice, transfer to the district where personal jurisdiction and venue may properly lie. In this case, however, two factors counsel against transfer and in favor of a dismissal with prejudice.

First, as all of the Defendants who have appeared in this action emphasize in their submissions in support of their motions to dismiss, Plaintiff has a long history of vexatious litigation against parties, including public officials, who are in any way related to her state court litigation. *See, e.g.*, *Lindsay Jenkins v. Josef Ackerman, et al.*, Civ. A. No. 07-22463 (S.D. Fla.); *Lindsay Jenkins v. Sheila Bair, et al.*, Civ. A. No. 09-20067 (S.D. Fla.); *Lindsay Jenkins v. Jack Cook*, Civ. A. No. 09-cv-20824 (S.D. Fla.); *Lindsay Jenkins v. Peter Blanc*, Civ. A. No. 11-80308 (S.D. Fla.).[5]  Indeed, on July 12, 2011 – nearly one year prior to the filing of the instant Complaint –  the Honorable Alan Gold of the Southern District of Florida entered a permanent injunction enjoining the Plaintiff from filing, without prior leave of court, "any action or proceeding, in any federal court of the United States, arising out of the acts of any person or entity involved in any capacity with the federal litigation stemming from the state foreclosure proceedings originated on August 1, 2007, involving Lindsay Jenkins, or the property in which she claims to assert an interest therein."  *See* Fed. Defs' Mot. to Dismiss, ECF No. [32], Ex. A

---

[5] Plaintiff's litigious activity has apparently not been limited to the Southern District of Florida.  *See Jenkins v. Eaton*, Civ. A. No. 08-713, 2010 WL 3861050 (E.D.N.Y. Aug. 25, 2010) ("Plaintiff has an extensive history of filing and participating in vexatious and baseless lawsuits. Including the nine cases filed in the Eastern District of New York, she has been involved in over thirty federal court cases in multiple states over the last decade.") (citing cases).

(Order of Permanent Injunction, *Jenkins v. Deutsche Bank National Trust Co.*, Civ. A. No. 07-22463 (July 12, 2011)).   Judge Gold's Order further states that "Plaintiff's failure to advise a federal court, agency, tribunal, committee, or other federal forum in which she has filed a lawsuit, action, proceeding, or matter, or in which she has intervened, of the materials identified in paragraph 4 of this Order [including, *inter alia*, an information statement concerning Plaintiff's litigation history], may be considered by such court or other forum as a sufficient basis for sustaining a motion to dismiss such… action, or a request otherwise to dispose of the matter filed or submitted by Plaintiff." *Id.* ¶5.   Accordingly, it appears that even if this Court possessed personal jurisdiction over the Florida Defendants who have appeared in this action (which it does not), because Plaintiff has neither sought leave of court to file the instant Complaint, nor attached to it any of the materials required by the Judge Gold's Order, the Court could, in its discretion, dismiss this action on that basis alone.   *See* FED. R. CIV. P. 41(b) ("If the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it.").

Second, even if the Court possessed personal jurisdiction over Defendants May, Brown, Polen, Hazouris, and Kelley, Plaintiffs claims against them would require dismissal because of the doctrine of judicial immunity.   Although Plaintiff's Complaint fails to allege with specificity the alleged "racketeering activity" undertaken by each of the named Florida Defendants, it is clear from the face of her Complaint that any allegations relating to them necessarily arose in the context of their rulings and determinations in Plaintiff's various cases before them.   However, such claims are not cognizable because a judge acting in his or her judicial capacity – *i.e.*, performing a "function normally performed by a judge" –  is immune from suit on all judicial acts, as long as the judge was not acting in the complete absence of jurisdiction.   *Mireles v.*

*Waco*, 502 U.S. 9, 11-12, 112 S. Ct. 286, 116 L. Ed. 2d 9 (1991).  Plaintiff in no way alleges that the Florida Defendants acted without jurisdiction, and her argument in her opposition brief that judges are not immune from suits for equitable relief is misplaced.  While courts do distinguish between equitable and monetary relief in this context, it is well established that judicial immunity bars claims – such as that asserted here with respect to the Florida Defendants – for retrospective declaratory relief of a violation of federal law.  *See Green v. Mansour*, 474 U.S. 64, 73, 106 S. Ct 423, 88 L. Ed. 2d 371 (1983).  Declaratory relief against a judge for final actions taken within his or her judicial capacity is instead available by way of a direct appeal of the judge's order.

For all of the foregoing reasons, the Court hereby grants Defendant May, Brown, Polen, Hazouri and Kelley's motions to dismiss, with prejudice, Plaintiff's claims against them.

### Plaintiff's  Pending Motions

Also pending before the Court are: Plaintiff's Motion for Entry of Default and Default Judgment against Defendant Lucy Chernow Brown, ECF No. [10]; Motion to Enter a Default as to All Defendants Who Have Appeared in this Action, ECF No. [18]; Motion for Leave to Serve Additional Defendants, ECF No. [46]; Motion to Vacate Order of December 12, 2012, ECF No. [47]; and Motion to Recuse the District Judge for Bias and Harassment, ECF No. [48].

The Court shall turn first to Plaintiff's motions for entry of default.  In her first default motion, Plaintiff contends that a default should be entered against Judge Brown for untimely responding to the Complaint.  *See* ECF No. [10].  In response, Defendant Brown explains that the reason for her untimely response to the Complaint was due to her counsel's mistaken belief that the only Defendant to have been served at that time was Chief Judge May and that as soon as Defendant Brown's counsel became aware that Defendant Brown had been served, a response

was immediately filed.  *See* ECF No. [23].  Defendant Brown further argues that because Defendant Brown's defenses are identical to those of the other Florida Defendants who did file timely responses, Plaintiff has suffered no prejudice, and the Court should find that good cause exists to exercise its discretion in not entering a default against Judge Brown.  In her second default motion, Plaintiff argues that a default should be entered as to all of the Florida Defendants who have appeared in this action because their counsel is not a member of the Federal District Court for the District of Columbia.  *See* ECF No. [18].  In response, Defendants Brown, May, Hazouri, and Polen explain that contrary to Plaintiff's contention, their counsel applied for and received "government" status before filing their motions to dismiss and has therefore been a member of the bar of this Court at all times during the instant litigation.  *See* ECF No. [23] (attaching completed registration materials and accompanying correspondence with the D.C. District Court Records Manager & Supervisor of Files & Intake).  The Court need not – and indeed should not –  address the merits of the parties' positions with respect to the foregoing motions because the Court has already found that it lacks personal jurisdiction over each of these Defendants is for that reason without authority to enter a default judgment against them.  *See Mwani v. bin Laden*, 417 F.3d 1, 7 (D.C. Cir. 2005) ("[A] court should satisfy itself that it has personal jurisdiction before entering judgment against an absent defendant.").  Accordingly, Plaintiff's motions for default judgment must be denied.

The Court shall turn next to Plaintiff's [47] Motion to Vacate Order of December 12, 2012.  On November 30, 2012, the Clerk of the Court received by U.S. Mail a First Amended Complaint, by which Jenkins purported to add seven additional defendants, including the Florida Attorney General, the Florida Bar, and several realty agencies and associations.  In brief, Plaintiff sought to add allegations that the Florida Attorney General is corrupt and has

intentionally refused to investigate or prosecute foreclosure fraud in the state of Florida, that the Florida Bar has similarly refused to take action against attorneys who file fraudulent foreclosure lawsuits, and that the added defendants have, in various ways, aided and abetted what Plaintiff refers to as the "foreclosure mills" which allegedly continue to harass and abuse her.   On December 12, 2012, the Court issued an order denying Plaintiff leave to file the amended complaint due to the fact that she had not filed any motion to amend therewith.  *See* ECF No. [39].  Plaintiff has now moved to vacate the Court's December 12, 2012 Order, arguing that she had 21 days from November 30, 2012, the date on which the Federal Defendants filed their motion to dismiss, to file an amended complaint.  *See* ECF No. [47].

It is true that under Federal Rule of Civil Procedure 15(a)(1)(B), a party may amend her pleading once as a matter of course within 21 days after service of a Rule 12(b) motion to dismiss.  Here, however, Plaintiff's motion – which was received by the Court's Mail Room on November 30, 2012 and itself dated November 27, 2012, *see* ECF No. [23], could not possibly have been in response to the Federal Defendants' motion to dismiss, as Plaintiff necessarily submitted it to the Court prior to her receipt of the Federal Defendants' motion to dismiss. Indeed, accompanying the Federal Defendants' motion to dismiss is a certificate of service indicating that the Federal Defendants served the motion upon Plaintiff by First Class Mail on November 30, 2012.  Additionally, in their motion to dismiss, the Federal Defendants indicate in a footnote that Plaintiff provided them with a copy of the amended complaint via electronic mail prior to their filing of the motion to dismiss, and they requested that, in the event the amended complaint was properly filed and accepted by the Court, their motion to dismiss also serve as their response to the allegations contained in the amended complaint.  This given, because Plaintiff clearly amended her Complaint *before* the Federal Defendants filed and served upon

Plaintiff their Rule 12(b) motion, she may not invoke Rule 15(a)(1) but rather, was required to follow the procedure set forth in Rule 15(a)(2), which provides that "[i]n all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave." Here, Plaintiff did not request leave to file her amended complaint as required by the Rule, and this Court properly declined to file it on the docket absent a formal request for leave to do so.

Finally, regarding Plaintiff's [46] Motion for Leave to Serve Additional Defendants, Plaintiff requests that the Court grant her until March 15, 2013, to serve all remaining defendants in this action – specifically, the nine yet unserved judges of the Fourth District Court of Appeals for the State of Florida. This Court has been exceedingly generous towards Plaintiff with regard to her numerous requests for extension in this matter.[6] Specifically regarding Plaintiff's time to effectuate service, Plaintiff was originally required to effectuate service upon all Defendants by October 1, 2012. On September 3, 2013, the Court issued an [19] Order pursuant to Federal Rule of Civil Procedure 4(m), instructing Plaintiff that in order to avoid the finality of a mandatory dismissal of this action against any unserved defendants, by no later than October 1, 2012, Plaintiff must cause process to be served and proof of service to be filed with the Court, or

---

[6] Indeed, to date, the Court has granted Plaintiff at least ten extensions of time, most of which were requested by Plaintiff well after the deadline for the relevant filing had passed, in contravention of Paragraph Seven of this Court's [2] Order Establishing Procedures, which provides, in pertinent part: "Motions for extension of time are strongly discouraged; they will be granted only in truly exceptional or compelling circumstances and parties should not expect the Court to grant extensions.. *Motions for extension of time must be filed at least four (4) business days prior to the first affected deadline.*" *See, e.g.,* Minute Order (Sept. 28, 2012) (granting *nunc pro tunc* Plaintiff's motion for an extension of time to respond to Defendants' Brown, Hazouri, and Polen's motions to dismiss); Minute Order (Sept. 29, 2012) (granting *nunc pro tunc* Plaintiff's motion for an extension of time to file responses to Defendants' May, Brown, Hazouri, and Polen's motions to dismiss); Order (Oct. 9, 2012), ECF No. [27] (granting Plaintiff's motion for extension of time to serve any unserved defendants); Order (Dec. 12, 2012), ECF No. [38] (vacating dismissal of Defendant Kelley's motion to dismiss due to Plaintiff's representation that mail service of the Court's October 19, 2012 Order cautioning her that dismissal would result from a failure to respond to Defendant Kelley's motion to dismiss was delayed, despite that Plaintiff failed to explain why she nevertheless waited several weeks after she did receive the Court's October 19, 2012 to notify the Court of the delayed mail service (and at no point requested an extension of time to respond)); Order (Dec. 28, 2012), ECF No. [42] (granting Plaintiff additional time to serve and file her opposition to the Federal Defendants' Motion to Dismiss and to serve and file her opposition to Defendant Kelley's Motion to Dismiss); Order (Jan. 8, 2013), ECF No. [45] (granting Plaintiff additional time to serve and file her opposition to the Federal Defendants' Motion to Dismiss and additional time to serve all unserved defendants).

establish good cause for her failure to do so.  The Court subsequently granted Plaintiff two extensions of time to serve, *see* ECF Nos. [27], [45], the most recent of which gave Plaintiff until January 28, 2013 and again cautioned Plaintiff that, "as to any defendants not served by January 28, 2012, the Court will dismiss this action without prejudice against those defendants."  Not until February 4, 2012 – one week after the Court ordered deadline for service – did Plaintiff file a motion seeking yet another extension of time to serve.  In view of the numerous extensions and warnings already given to Plaintiff in this matter, and because Plaintiff has failed to demonstrate good cause for these repeated delays, the Court hereby denies Plaintiff's request for additional time to serve the unserved defendants.  This holding is further supported by the fact that, even if Plaintiff had effectuated timely service upon the unserved defendants – which she did not – her claims against them would almost certainly also have required dismissal given the fact that the unserved defendants, all of whom are judges for the Fourth District Court of Appeals for the State of Florida, appear to be identically situated to their colleagues upon whom Plaintiff did effect service and who, for the reasons discussed in detail above, must be dismissed from this action.

## Removal of *Lis Pendens*

Lastly, the Court shall address the filing of a Notice of *Lis Pendens* by Plaintiff on December 12, 2012.  *See* Misc. A. No. 12-00665, ECF No. [1].  The purpose of a *lis pendens* is "to enable interested third parties to discover the existence and scope of pending litigation affecting property."  *Heck v. Adamson*, 941 A.2d 1028, 1029 (D.C. 2008) (citation omitted).  The legal effect of *lis pendens* "is that nothing relating to the subject matter of the suit can be changed while it is pending and one acquiring an interest in the property involved therein from a party thereto takes such interest subject to the parties' rights as finally determined, and is

conclusively bound by the results of the litigation.  On the other hand, *lis pendens* is still only a notice; unlike a lien, a person obtains no new property interest through the operation of the *lis pendens* doctrine." *Id.* at 1030 n.1 (D.C. 2008) (citations and internal marks omitted).  As the District of Columbia Court of Appeals has observed, cancellation by a court of a *lis pendens* notice is warranted in only rare circumstances, as the governing statute, D.C. Code § 42-1207(a), "envisions that the notice will remain in effect until judgment on the underlying action is rendered[.]" *McWilliams Ballard, Inc. v. Level 2 Development*, 697 F. Supp. 2d 101, 111 (quoting *Heck*, 941 A.2d at 1030).  "Even then, 'in a case in which an appeal from such judgment would lie, the prevailing party shall not record the judgment until after the expiration of the latest' of three enumerated conditions." *Heck*, 941 A.2d at 1030 n.2 (citing D.C. Code § 42-1207(d)(1-3)).

In the District of Columbia, a *lis pendens* notice may be filed if an action in "state or federal court in the District of Columbia, or in any other state, federal, or territorial court" either "affect[s] the title to" or otherwise "assert[s] a mortgage, lien, security interest, or other ownership interest in real property situated in the District of Columbia."  D.C. Code § 42-1207(a).  "Other matters, though at first appearing to involve real property, do not support the filing of a *lis pendens* because no specific property is designated for relief in the judgment or decree." *McNair Builders, Inc. v. 1629 16th St., LLC*, 968 A.2d 505, 507 (D.C. 2009) (internal citations and quotation marks omitted).

Here, Plaintiff's Notice of *Lis Pendens* presents one of those rare cases clearly requiring cancellation by the Court for two reasons.  First, as aforementioned, for a *lis pendens* to operate, there must be a pending case "affecting the title to" or otherwise "asserting a[n]…ownership interest in real property *situated in the District of Columbia*."  D.C. Code § 42-1207(a) (emphasis

added).   The instant Notice plainly states that "[t]he property that is the subject matter of this notice is in Palm Beach, County, Florida[.]" ECF No. [1], at 1.  Second, Plaintiff's Complaint in the underlying civil action "do[es] not support the filing of a *lis pendens* because no specific property is designated for relief in the judgment or decree."  *McNair Builders*, 968 A.2d at 507. Rather, as discussed in detail above, Plaintiff's Complaint seeks only "declaratory relief" in the form of a declaration that the Florida Defendants are operating as a "racketeering enterprise," and "injunctive relief" requiring the Federal Defendants to "take affirmative steps to protect Plaintiff's rights under international law to be free of criminal activity directed at her by local public officials in the United States."  Compl. at 15, 16.   Accordingly, even if Plaintiff's Complaint had withstood Defendants motions to dismiss, because nothing therein could be construed as "asserting a[n] …ownership interest in real property," D.C. Code § 42-1207(a), the filing of a *lis pendens* notice in the District of Columbia was not warranted in the first place.

For all of the foregoing reasons, the Court shall remove the Notice of *Lis Pendens* filed by Plaintiff on December 12, 2012 and dismiss Plaintiff's Miscellaneous Action No. 12-00665.

## Conclusion

For the reasons stated herein, the Court shall dismiss, with prejudice, Civil Action No. 12-00896 in its entirety and shall also dismiss Plaintiff's Miscellaneous Action No. 12-00665. An appropriate Order accompanies this Memorandum Opinion.

Date:  March 7, 2013

_____/s/_____
**COLLEEN KOLLAR-KOTELLY**
United States District Judge